## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FELICIA REICHNER, a minor, | : | No. 3:00cv1392 |
| by MAYNA SWINEHART, guardian, | : | |
| **Plaintiffs** | : | (Judge Munley) |
| | : | |
| **v.** | : | |
| | : | |
| K-MART CORPORATION AND | : | |
| SISTER SISTER, INC., | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court for disposition are several motions in limine regarding expert witness testimony filed by the defendants in the instant action.   The matters have been fully briefed and argued.[1]   For the reasons that follow, the motions will be denied.

**Background**

The minor plaintiff, Mayna Swinehart, was injured when her clothing caught fire. The instant lawsuit was filed to recover for her injuries.  The plaintiff asserts that the clothing was unreasonably dangerous in its flammability and its lack of warning.

Plaintiff intends to call two expert witnesses in the trial of this case, Jeffrey O. Stull and Kenneth Laughery.  The defendants have moved to preclude these witnesses from testifying, challenging their qualifications and the reliability of their opinions. Defendant Kmart also seeks to preclude a supplemental report authored by Stull.   We shall address this motion first.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiffs are citizens of the Commonwealth of Pennsylvania.  Defendant Kmart is a Michigan corporation with a principal place of business in Michigan, and

---

[1]In lieu of in court testimony, the court ordered the parties to submit the deposition transcripts of the challenged experts.

Defendant Sister-Sister is a New York Corporation with a principal place of business in New York. Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

### I.  Motion to exclude supplemental report

Before addressing the merits of the motions to exclude the witness's testimony, we will address Kmart's motion to exclude the supplemental report of Jeffrey O. Stull. Kmart asserts that this report was submitted prejudicially late in November of 2005, approximately a year and a half past the deadline for submitting expert reports. We will deny the defendant's motion.

Although, the deadline for submitting expert reports was May 15, 2004 (Doc. 44), the defendants will not be prejudiced by the supplemental report. The new report merely expands upon or provides support for the first report. For instance, the first report indicated that loose dangling fabric ties will ignite when exposed to open flame. The supplemental report provides the results of testing to support that finding.

Moreover, Stull explains in the supplemental report that it was submitted late, at least partially, because he has been suffering from advanced esophegeal cancer and had undergone extensive chemotherapy, radiation therapy and surgery. (Stull's Supplemental Report, Ex. A, to Kmart's motion (Doc. 120)). In light of the reason for the last submission, and the fact that the supplemental report merely expands upon the first report, we find that it need not be precluded and will deny Kmart's motion.

### II.  Motion to exclude Jeffrey Stull's testimony

Plaintiff intends to call Jeffrey O. Stull as an expert in the field of combustible fabrics, their degree of flame spread and extinguishment, and appropriate label practices for apparel. (Stull's Report, Ex. A, to Kmart's Motion in Limine to Exclude Stull's

Testimony (Doc. 94)).

According to his report, Stull's conclusions are as follows:

> The clothing at issue was unreasonably dangerous because of the ease at [sic] which the cotton fabric would ignite when momentarily contacted by flame of a disposable butane lighter. The specific design of this clothing was further hazardous since the clothing items was [sic] not snug fitting because of the loose ties in the madras style clothing provided at the bottom of the blouse. The loose ends of these ties will more readily ignite with flame contact when compared to the same contact of flame on the surface of blouse material. The ease of ignition for the clothing worn [sic]Felicia Reichner in combinaton with the rapid spread of the flame once ignited contributed the extent and severity of her burn injuries.

(Id. at 4). He further concludes that if the clothing had been treated to be flame resistant or been made from intrinsically flame resistant material, the minor plaintiff would not have suffered any injuries. (Id. at 4 - 5). Additionally, he opines that the absence of warnings rendered the clothing unreasonably dangerous. (Id. at 5). The defendants seek to preclude this testimony.

With regard to the admission of expert testimony, the Federal Rules of Evidence provide as follows:

> **Testimony by Experts**
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Both defendants first attack the qualification of Stull to be an expert in the proffered fields, and then they attack the reliability of Stull's methods and principles. We will address each issue separately.

1) Qualifications

3

In order to qualify a witness to testify as an expert under Rule 702, that witness must have "specialized knowledge" in the area of his proposed testimony. That knowledge can come from practical experience, academic training and credentials. Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998). The Third Circuit Court of Appeals interprets the "specialized knowledge" requirement liberally, with respect to both the substantive and formal qualifications of experts. Id.

In the instant case, the record reveals that Stull is qualified to testify as an expert in the field of combustible fabrics, their degree of flame spread and extinguishment, and appropriate label practices for apparel. Stull has a B.S. degree in Physical Sciences from the U.S. Coast Guard Academy, and he graduated with high honors. (See Stull's Curriculum Vitae, Doc. 94-3). He also has an M.S. degree in Chemical Engineering from the Georgia Institute of Technology, and an M.S. degree in Engineering Management from Catholic University. (Id.).

Additionally, Stull is the current chairman of the American Society for Testing and Materials Committee on Protective Clothing. He has been responsible for the development and promulgation of several test methods and other standards related to protective clothing. He is the lead representative for the United States for ISO Technical Committee 94, Subcommittee 13 on Protective Clothing and chairs Working Group 2 on Flame and Heat Protection. He has authored numerous articles and other publications related to material or clothing flammability. (Stull's Report, Ex. A, to Kmart's Motion in Limine to Exclude Stull's Testimony (Doc. 94) report, page 5, see also Curriculum Vitae).

The defendants do not attack Stull's qualifications generally; rather, they claim his expertise is in protective, industrial use clothing, not consumer apparel. While it does appear that the majority of Stull's expertise relates to protective apparel, we find that the distinction is irrelevant in the instant action. As set forth above, Stull opines that the

4

clothing was hazardous because it was not snug fitting and had dangling ties.  Nothing in the record indicates that there would be a distinction between protective clothing and consumer clothing with respect to the factors that Stull highlights, that is the presence of dangling ties and the fit of the clothing.  They appear to be factors applicable to clothing generally and not specifically to any particular type of apparel.  Moreover, application of flame retardants would be applicable to all types of clothing also.  It is apparent that Stull's conclusions are applicable to clothing generally and do not apply specifically to protective clothing or consumer apparel.  Perhaps these are subjects of cross-examination for the defendants, but they certainly do not render this highly qualified expert's testimony inadmissible or irrelevant.

2) Reliability of Stull's methods and principles/ Daubert

Both defendants also attack the reliability of the methods and prinicples used by Stull, and hence, his conclusions.  Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), an expert's opinion can be considered reliable where it is based upon methods and procedures of science as opposed to being the expert's subjective belief or unsupported speculation.  Id. at 589.  There must be "good grounds" for the expert's belief.  Id.

Court's utilize the following list of non-exclusive "Daubert factors" to evaluate whether an expert's methodology is reliable:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Elcock v. Kmart Corp., 233 F.3d 734, 745-46 (3d Cir. 2000).

The method that Stull used to establish his hypothesis is actual testing.  As such, it is by definition a testable hypothesis.  Stull's conclusion that treated fabrics or

intrinsically flame resistant fabric would have prevented the incident, is based upon his expertise in the area of fabric flammability and would need no testing to establish. Finally, Stull's opinion regarding a warning or labeling is based upon a survey of consumers entitled "The Rhode Island Report."  The use of surveys comports with Daubert's requirements.[2]

Accordingly, we find that no reason exists to preclude plaintiff from presenting the testimony

### III.  Motion to exclude Kenneth Laughery's testimony

The defendants also challenge the testimony of Kenneth R. Laughery, the plaintiff's proposed expert in human factors and warnings.  Laughery opines that the defendants' failure to provide adequate warnings regarding the flammability hazards of the clothing rendered it unreasonably dangerous.  (Laughery's Report, Ex. A, to Sister Sister's Motion to Exclude, (Doc. 103) at 4).  As with the other expert witness, the defendants' challenge both Laughery's qualifications and the reliability of his techniques.[3]  Employing the same standard as set forth above we will address these issues *in seriatim*.

1.  Qualifications

Laughery attained the following academic degrees from Carnegie-Mellon University: Bachelor of Science in Metallurgical Engineering, Masters of Science in Psychology, and a PhD in Psychology.  (Id. at 1).  He is a licensed psychologist in the State of Texas and is a certified human factors professional.  (Id. at 2).  He has been president of the national Human Factors and Ergonomics Society.  (Id.).

---

[2]This survey is addressed more fully with regard to the motion to preclude Laughery's testimony.

[3]Defendant Sister Sister challenges Laughery's qualifications and both defendant challenge the scientific validity of his conclusions under Daubert

His professional experience includes Research Psychologist at the US Army Human Engineering Laboratories from 1963-1963.  (Id. at 1).  He has also been a faculty member at the State University of New York at Buffalo in the Psychology and Industrial Engineering Departments.  (Id.).  He served as the chair of the Industrial Engineering Department at this school.  He also served as a visiting professor at the University of Sussex England.  (Id.).  Subsequently, we was a professor and chair of the psychology department at the University of Houston.  (Id.).  After that position,  he worked at Rice University as an Endowed Chair Professor of Psychology.   (Id. at 2).  He retired from Rice in 2001. (Id.).

He has participated in various research projects both with the government and through private companies.  His research has been published in peer-reviewed journals, and he has authored and co-authored over 130 articles.  Moreover, he has edited/authored three books on warnings and a book on information technology. (Id.).

Defendant Sister Sister challenges Laughery's qualifications on the basis that the nature of the product in this case requires particular knowledge of consumer apparel including its production, marketing and consumer concerns.  They claim that Laughery does not possess knowledge on the use and efficacy of warnings that is specific to the consumer apparel industry.

We are not convinced that the consumer apparel industry is so unique that it renders irrelevant Laughery's vast experience and education in the human factors field and warnings.  Laughery is offered by the plaintiff's in the field of warnings and human factors, not in the field of clothing and flammability.

At his deposition, Laughery explained the distinction between an expert in warnings and an expert in the underlying product as follows:

> Let me just make another point here that, I guess, I think is a clarification.  We talked earlier about the number of different products that have been involved in warning cases in which I have given opinions and testified.  And, obviously, I'm

> not an expert on a hundred, plus or minus, something different
> products in terms of their design, in terms of engineering
> characteristics of them and so forth.  My expertise is warnings.
>     The point I make is the principals of warnings are not
> product specific.  There are not a set of principals about
> warnings that apply to lawnmowers and a different set that
> apply to automobiles and another set that apply to clothes and
> another set that apply to solvents.   The principals of warnings
> are general.  And that's the sense in which I made the point in
> response to your question that, well, I haven't specifically
> studied warnings on clothing, I have studied warnings in ways
> that are applicable to warnings on clothing.

Laughery Depo. At 66 - 67.

Accordingly, we find that Laughery does not have to be an expert in consumer apparel to be an expert in the warnings applicable to such apparel, and he is qualified to testify as an expert in the area of  in human factors and warnings.

2) Scientific reliability - Daubert

Defendant Sister Sister argues that whatever opinions Laughery holds are unreliable because they have not been subject to any scientific analysis, scrutiny or methodology.  Kmart argues that his findings lack scientific validity and are unreliable and inadmissible.  After a careful review, we disagree with the defendants.

Laughery described the method he used in developing his opinion as follows:

> [S]cientific method is a knowledged discovery method and it
> involves a lot of different kinds of methodologies.  In the
> context of psychology and human factors, it can involve what -
> - in that discipline we talked about, experimental research,
> where you manipulate independent variables and you measure
> dependent variables and you worry about control variables and
> bias.  That's one methodology that is within the context of
> scientific method, but there are others.   It may be surveys, it
> may be interviews, it may involve case studies.  Those are all
> variations on the scientific method.

Id. at 48-49

Laughery's opinion is based upon a survey prepared by Patricia A. Helms entitled Rhode Island Survey of Consumer Knowledge of Clothing Falmmability.  Although the survey has not been peer reviewed, Dr. Laughery, who has performed peer review of various works, concluded that the survey meets with his approval.  Id. at 47.

In addition, his opinion is based upon his experience and knowledge in the area of warnings and human factors.  As such we find that his opinions are more than mere speculation and the Daubert standard for admissibility is met.  Accordingly, we will deny the motions to preclude his testimony.

**Conclusion**

For the foregoing reasons, we will deny the motion to preclude the supplemental report of Jeffrey O. Stull. The motions to preclude the testimony of Stull and Kenneth Laughery will also be denied as we find them to be qualified and their opinions are reliable under <u>Daubert</u>.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FELICIA REICHNER, a minor, | : | No. 3:00cv1392 |
| by MAYNA SWINEHART, guardian, | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| K-MART CORPORATION AND | : | |
| SISTER SISTER, INC., | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 15th day of December 2005 it is hereby ordered as follows:

1) Defendant Sister Sister's motion to exclude expert testimony of Jeffrey O. Stull (Doc. 89) is hereby **DENIED**;

2) Defendant Sister Sister's motion to exclude expert testimony of Kenneth R. Laughery (Doc. 90) is hereby **DENIED**;

3) Defendant Kmart's motion to preclude testimony of Kenneth Laughery (Doc. 93) is hereby **DENIED**;

4) Defendant Kmart's motion to preclude testimony of Jeffrey Stull (Doc. 94) is hereby **DENIED**; and

5) Defendant Kmart's motion to exclude /preclude the supplemental expert witness report of Jeffrey O. Stull dated November 22, 2005 (Doc. 120) is hereby **DENIED**.

BY THE COURT:


s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court